**WADE KILPELA SLADE LLP**
Gillian L. Wade (S.B. #229124)
gwade@waykayslay.com
Marc A. Castaneda (S.B. #299001)
marc@waykayslay.com
2450 Colorado Ave., Ste. 100E
Santa Monica, California 90404
Telephone: (310) 396-9600

**CARNEY BATES & PULLIAM, PLLC**
Randall K. Pulliam (*pro hac vice*)
rpulliam@cbplaw.com
Lee Lowther (*pro hac vice*)
llowther@cbplaw.com
One Allied Dr., Ste. 1400
Little Rock, AR 72202
Telephone: (501) 312-8500
Facsimile: (501) 312-8505

**JACOBSON PHILLIPS PLLC**
Joshua R. Jacobson (*pro hac vice*)
joshua@jacobsonphillips.com
2277 Lee Rd., Ste. B
Winter Park, FL 32789
Telephone: (321) 447-6461

Attorneys for Plaintiffs and the Proposed
Settlement Class

### UNITED STATES DISTRICT COURT
### CENTRAL DISTRICT OF CALIFORNIA

ROBERT FEEMAN and BRADLEY BAILEY, individually and on behalf of all others similarly situated,

Plaintiffs,

v.

ALBERT CORPORATION, and, ALBERT CASH, LLC,

Defendants.

Case No. 2:25-cv-03605-MWC-BFM

**MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT AND INCORPORATED MEMORANDUM OF LAW IN SUPPORT**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES .......................................................................... iii

I.     INTRODUCTION. ............................................................................... 1

II.    SUMMARY OF THE PROCEEDINGS. ............................................. 2

III.   SUMMARY OF THE PROPOSED SETTLEMENT. ............................ 4

   A.   Settlement Benefits. ..................................................................... 4

   B.   Notice. .......................................................................................... 5

   C.   Class Counsel's Applications for (i) Attorneys' Fees and Costs and (ii) Service Awards. ..................................................................... 6

IV.    PROPOSED SCHEDULE OF EVENTS. ............................................ 7

V.     APPLICABLE LEGAL STANDARDS. .............................................. 8

VI.    THE PROPOSED SETTLEMENT WARRANTS PRELIMINARY APPROVAL. ....................................................................................... 10

   A.   The Settlement Satisfies the Criteria for Preliminary Approval. ........ 11

      1.   The Settlement Was the Result of Arm's Length Negotiations Between the Parties, Has No Obvious Deficiencies, and Treats Settlement Class Members Equally. ................................................ 11

      2.   The Settlement Falls Within the Range of a Reasonable Settlement While Guaranteeing Settlement Class Members Tangible and Immediate Benefits Without the Risks of Further Litigation. ....................................... 13

   B.   The Proposed Notice Program Is Adequate. ............................... 16

VII.   CONDITIONAL CERTIFICATION OF THE SETTLEMENT IS APPROPRIATE. ................................................................................. 17

   A.   The Class Is Sufficiently Numerous. ........................................... 18

   B.   There Are Common Issues of Law or Fact Common to the Settlement Class. ....................................................................... 18

   C.   The Claims of Plaintiffs are Typical of the Claims of the Settlement Class. ....................................................................... 19

   D.   Plaintiffs and Class Counsel Have Fairly and Adequately Represented the Interests of the Settlement Class, and Will Continue to Do So. ........... 20

   E.   The Common Questions of Law and Fact in this Action Predominate Over Any Individual Issues and a Class Action Is the Superior and Most Efficient Means to Adjudicate the Claims. ................................................ 21

-i-

**VIII. CONCLUSION** ........................................................................................... 22

MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT
AND INCORPORATED MEMORANDUM OF LAW IN SUPPORT
CASE NO. 2:25-CV-03605-MWC-BFM

# TABLE OF AUTHORITIES

**Cases**

*Adkins v. Facebook, Inc.*, No. C 18-05982 WHA, 2020 WL 6710086 (N.D. Cal. Nov. 15, 2020) ................................................................................ 9, 11

*Amchem Products Inc. v. Windsor*, 521 U.S. 591 (1997) ............................ 21, 22

*Chea v. Lite Star ESOP Committee, et al.*, No. 1:23-CV-00647-SAB, 2025 WL 2938836 (E.D. Cal. Oct. 16, 2025) ................................................. 10

*Churchill Village, L.L.C. v. General Elec.*, 361 F.3d 566 (9th Cir. 2004) ..... 15, 16

*Class Plaintiffs v. City of Seattle*, 955 F.2d 1268 (9th Cir. 1992) ...................... 10

*Deaver v. Compass Bank, et al.*, No. 13-cv-00222, 2015 WL 4999953 (N.D. Cal. Aug. 21, 2015) ................................................................ 10, 11, 12

*Ellis v. Costco Wholesale Corp.*, 657 F.3d 970 (9th Cir. 2011) ......................... 20

*Hanlon v. Chrysler Corp.*, 150 F.3d 1011 (9th Cir. 1998) ...................... 11, 19, 21

*Hanon v. Dataprods. Corp.*, 976 F.2d 497 (9th Cir. 1992) ................................. 19

*Hendricks v. Starkist Co.*, No. 13-CV-00729-HSG, 2015 WL 4498083 (N.D. Cal. July 23, 2015) ..................................................................... 12

*Hoover v. Asm Glob. Parent, Inc.*, No. 2:24-cv-10794-WLH-PVC, 2025 U.S. Dist. LEXIS 171808 (C.D. Cal. Sept. 3, 2025) ................................... 17

*Ikuseghan v. Multicare Health Sys.*, No. C14-5539 BHS, 2015 WL 4600818 (W.D. Wash. July 29, 2015) ............................................................... 19

*In re Apple Computer Sec. Litig.*, No. C-84-20148-(A)-JW, 1991 WL 238298 (N.D. Cal. Sept. 6, 1991) ................................................................... 15

*In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935 (9th Cir. 2011) ......... 12

*In re Linkedin User Privacy Litig.*, 309 F.R.D. 573 (N.D. Cal. 2015) ................. 14

*In re Michael Milken & Assocs. Sec. Litig.*, 150 F.R.D. 46 (S.D.N.Y. 1993) ...... 14

*In re Prudential Ins. Co. of Am. Sales Practice Litig.*, 148 F.3d 283 (3d Cir. 1998) ................................................................................................. 21

*In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078 (N.D. Cal. 2007 ............. 13

*In re Warner Comm. Sec. Litig.*, 618 F. Supp. 735 (S.D.N.Y. 1985), *aff'd*, 798 F.2d 35 (2d Cir. 1986) ....................................................................... 15

*Ismail v. Am. Airlines, Inc.*, No. CV 22-1111-KK-JPRX, 2024 WL 4755594 (C.D. Cal. Sept. 11, 2024) ................................................................... 9

*Kabasele v. Ulta Salon, Cosms. & Fragrance, Inc.*, No. 221CV01639WBSCKD, 2023 WL 2918679 (E.D. Cal. Apr. 12, 2023) ...................................... 9

*Kui Zhu, et al., v. Taronis Technologies Incorporated, et al.*, No. cv-19-04529, 2020 WL 6868906 (D. Ariz. Nov. 23, 2020) ....................................... 8

*Nat'l Rural Telecommunications Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523 (C.D. Cal. 2004) ...................................................................................... 8

*Nevarez v. Forty Niners Football Co., LLC*, 326 F.R.D. 562 (N.D. Cal. 2018) .. 18

*Newman v. Stein*, 464 F.2d 689 (2d Cir. 1972)......................................................... 13

*Noll v. eBay, Inc.*, 309 F.R.D. 593 (N.D. Cal. 2015)................................................ 14

*Phillips v. Caliber Home Loans, Inc.*, Case No. 19-cv-2711, 2021 WL 3030648
    (D. Minn. July 19, 2021) .................................................................................. 19

*Rael v. Children's Place, Inc.*, No. 3:16-cv-00370, 2020 WL 434482 (S.D. Cal.
    Jan. 28, 2020)................................................................................................... 10

*Roe v. Frito-Lay, Inc.*, No 14CV-00751, 2017 WL 1315626 (N.D. Cal. Apr. 7,
    2017) ................................................................................................................. 12

*Silveira v. M&T Bank*, No. 2:19-cv-06958-ODW(KSx), 2021 WL 2403157 (C.D.
    Cal. May 6, 2021) ...................................................................................... 18, 21

*Stanger v. China Elec. Motor, Inc.*, 812 F.3d 734 (9th Cir. 2016) ................... 7, 12

*Stovall-Gusman v. W.W. Granger, Inc.*, No. 13-CV-02540-HSG, 2015 WL
    3776765 (N.D. Cal. June 17, 2015)................................................................. 13

*Strougo v. Bassini*, 258 F. Supp. 2d 254 (S.D.N.Y. 2003) .................................... 15

*Uschold v. NSMG Shared Services, LLC*, 333 F.R.D. 157 (N.D. Cal. 2019)......... 9

*Villegas v. J.P. Morgan Chase & Co.*, No. cv 09-00261, 2012 WL 5878390 (N.D.
    Cal. Nov. 21, 2012) ......................................................................................... 11

*Watkins v. Rapid Fin. Sols., Inc.*, No. 320CV00509MMDCSD, 2022 WL
    16964808 (D. Nev. Nov. 15, 2022)................................................................. 21

*West Virginia v. Chas. Pfizer & Co.*, 314 F. Supp. 710 (S.D.N.Y. 1970), *aff'd*,
    440 F.2d 1079 (2d Cir. 1971) .................................................................... 14, 15

*Williams v. First Nat'l Bank*, 216 U.S. 582 (1910) ............................................. 10

**Statutes**

10 U.S.C. § 987 ........................................................................................................ 2

15 U.S.C. § 1638 ...................................................................................................... 2

O.C.G.A. §§ 16-17-2............................................................................................... 3

**Other Authorities**

Manual for Complex Litigation, Third, § 30.41, at 236–37 (1995) ....................... 8

**Rules**

Fed. R. Civ. P. 23 .......................................................................................... passim

1  Plaintiffs Robert Feeman and Bradley Bailey ("Plaintiffs"), by and through
2  undersigned counsel and pursuant to the Class Action Settlement Agreement and
3  Release, dated October 29, 2025, and filed herewith (the "Settlement Agreement"),
4  and the exhibits attached thereto, move this Court for preliminary approval of the
5  proposed settlement (the "Settlement") of this action (the "Action"). More
6  specifically, Plaintiffs respectfully request this Court enter an order, in substantial
7  form to the proposed order attached as Exhibit 5 to the Settlement Agreement, (1)
8  preliminarily approving the Settlement, (2) provisionally certifying the Settlement
9  Class, (3) appointing Plaintiffs as Settlement Class Representatives, (4) appointing
10  Carney Bates & Pulliam, PLLC, and Jacobson Phillips PLLC as Class Counsel for
11  the Settlement Class, (5) approving the form and manner of notice to the Settlement
12  Class, (6) approving the proposed schedule of events, and (7) scheduling a Final
13  Fairness Hearing.

## I.    INTRODUCTION.

14
15  Plaintiffs, on behalf of themselves and the members of the Settlement Class
16  (defined below), and Defendants Albert Corporation and Albert Cash, LLC
17  ("Defendants" or "Albert") (collectively with Plaintiffs, the "Parties") have
18  reached a proposed Settlement in this Action. The Settlement was reached only
19  after intensive litigation, discovery, and arm's length negotiations, including a full-
20  day mediation session and post-mediation negotiations. The Settlement provides
21  significant and material benefits to the Settlement Class, including a cash
22  settlement fund of $5,200,000 (the "Settlement Fund") and important prospective
23  relief. Moreover, the proposed Notice Program is designed to provide
24  individualized notice to each Settlement Class Member identified through a search
25  of Defendants' records. Notice will be provided digitally through the Albert
26  application, by email, when available, and by postal mail. The Notices will inform
27  each Settlement Class Member of the terms of the Settlement and their options

28

MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT
AND INCORPORATED MEMORANDUM OF LAW IN SUPPORT
CASE NO. 2:25-CV-03605-MWC-BFM

1  thereunder. There is no claims process; instead, each Settlement Class Member
2  who does not opt out will automatically receive a payment on a pro rata basis, based
3  on the dollar amount of the Instant Transfer Fees the Settlement Class Member paid
4  during the Class Period. No funds from the Settlement will revert to Defendants.
5  Class Counsel believe that this is an excellent result for the Settlement Class.

6  Moreover, Class Counsel will request attorneys' fees equal to 25% of the
7  Settlement Fund, which is the benchmark in the Ninth Circuit for the percentage-
8  of-fund method, and reimbursement of out-of-pocket litigation expenses. Also,
9  consistent with Ninth Circuit precedent, Plaintiffs will request Service Awards of
10 $5,000 each in recognition of their service as the Settlement Class Representatives.

11 Accordingly, Plaintiffs respectfully submit that the Court should
12 preliminarily approve the Settlement as fair, reasonable, and adequate,
13 conditionally certify the Settlement Class, provide for notice to the Settlement
14 Class, and schedule a hearing before the Court to determine whether the Settlement
15 should be finally approved.

16 **II.     SUMMARY OF THE PROCEEDINGS.**

17 On March 25, 2025, Plaintiff Feeman filed a putative class action complaint
18 in the Superior Court of California, Los Angeles County, captioned *Feeman v.*
19 *Albert Corporation, et al.*, No. 25STCV08658, asserting claims for violations of
20 the Military Lending Act, 10 U.S.C. § 987, *et seq.* ("MLA") and the Truth in
21 Lending Act, 15 U.S.C. § 1638 ("TILA").

22 Defendants filed an Answer in the Superior Court on
23 April 23, 2025. Dkt. No. 1-11. After answering, Defendants removed this Action
24 to the United States District Court for the Central District of California, where it
25 was assigned case number 2:25-cv-03605-MWC-BFM.

26 On May 13, 2025, Plaintiffs filed an Amended Complaint (the "Complaint"),
27 which added Plaintiff Bailey as a named plaintiff and a claim for violation of the

28

-2-

Georgia Payday Lending Act ("PLA"), O.C.G.A. §§ 16-17-2, *et seq*. *See* Dkt. No. 16.

On June 6, 2025, Defendants filed a Motion to Compel Arbitration and Stay Litigation. Dkt. No. 22. Plaintiffs filed their opposition on July 11, 2025 (Dkt. No. 32), and Defendants filed their reply on July 18, 2025 (Dkt. No. 33).

On July 1, 2025, the Court issued a Civil Trial Order. Dkt. No. 28. Among other things, the Court set a July 31, 2026, deadline for the parties to hold a settlement conference before a private mediator.

On August 11, 2025, the Court, on its own motion, ordered the Parties to file supplemental briefing on the issue of whether the at-issue Albert Instant transactions constitute the "extension of consumer credit" under the MLA, and the appropriate standard of review the Court should apply in making such a determination. Dkt No. 37. A briefing schedule was set, with Defendants' supplemental brief due August 18, 2025, and Plaintiffs' supplemental brief due August 22, 2025. *See id*.

On August 13, 2025, the Court entered the Parties' stipulation to extend Defendants' deadline to file their supplemental brief to August 25, 2025, and to extend Plaintiffs' deadline to file their supplemental brief to August 29, 2025. Dkt. No. 39.

On August 21, 2025, the Parties notified the Court that they had agreed to privately mediate before Niki Mendoza of Phillips ADR Enterprises, and scheduled an in-person mediation for September 23, 2025. Dkt. No. 40. As such, the Parties stipulated to a stay of litigation and all interim deadlines, pending the outcome of mediation. *Id*.

On August 25, 2025, the Court extended Defendants' and Plaintiffs' deadlines to file their supplemental briefs to September 29, 2025 and October 3, 2025, respectively. Dkt. No. 41.

-3-

On September 23, 2025, the Parties attended an in-person mediation session before Niki Mendoza of Phillips ADR Enterprises. After an approximately eleven-hour mediation, the Parties reached an agreement in principle and executed a settlement term sheet.

On September 26, 2025, the Parties notified the Court that they had reached an agreement in principle, and requested a stay of proceedings to allow them time to finalize the settlement terms and submit them to the Court for approval. Dkt. No. 42.

Thereafter, the Parties worked cooperatively together to use the term sheet to draft a comprehensive Settlement Agreement and exhibits thereto, which is being filed herewith.

## III.    SUMMARY OF THE PROPOSED SETTLEMENT.

### A. Settlement Benefits.

Under the proposed Settlement, Defendants shall establish a cash settlement fund of $5,200,000 (the "Settlement Fund") for the benefit of Settlement Class Members. In accord with paragraph 38 of the Settlement Agreement, the Settlement Class shall include:

> All Albert Instant customers who from December 1, 2024, through the date an order granting preliminary approval is entered received any Albert Instant advance in connection with which they paid a transfer fee and were active-duty servicemembers or were spouses or eligible dependents of such servicemembers at the time they took such Albert Instant advance.

Unless a Settlement Class Member submits a valid and timely Request for Exclusion, he or she will automatically receive his or her *pro rata* distribution from the Settlement Fund, less any court-approved attorneys' fees and costs, service awards, and costs of notice and settlement administration (the "Net Settlement Amount"), upon Court approval. A Settlement Class Member's *pro rata* distribution will be calculated based on the dollar amount of the Instant Transfer

-4-

Fees the Settlement Class Member paid during the Class Period ("Settlement Payment"). Settlement Payments issued under the Settlement will be negotiable for 120 calendar days after the date of issuance. Settlement Payments that have not been negotiated within the 120 days after issuance shall be void. If any funds remain in the Net Settlement Fund after thirty (30) calendar days after the last issued check is no longer valid, and to the extent feasible, they shall be distributed to Settlement Class Members via a second and/or third distribution. Any costs associated with the additional distributions will be paid from the Settlement Fund. If the amount of funds remaining is so minimal that an additional distribution would be impracticable or infeasible, then the remaining funds shall be distributed to Operation Homefront (the "Cy Pres Recipient"). In no event shall funds be returned to Defendants. *See* Settlement Agreement at ¶¶ 43-45, 65, 68-69.

In addition to the monetary benefits, Defendants have agreed to adopt practices designed to refrain from assessing transfer fees on direct transfers of Albert Instant advances to active-duty service members or eligible dependents under the Military Lending Act, for a period of two (2) years beginning on September 30, 2025, until September 30, 2027. *See id*. at ¶ 48.

In exchange for the consideration from the Defendants, the Action will be dismissed with prejudice upon final approval of the Settlement, and the Settlement Class Members will thereby Release all claims against the Released Parties, relating in any way to the Released Claims. *See id*. at ¶¶ 30-32, 75-76.

**B. Notice.**

As set forth in Section VI of the Settlement Agreement, notice to Settlement Class Members shall be made by:

a.    Digital Notice via the Albert application for all Settlement Class Members who are current users of the Albert application;

MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT
AND INCORPORATED MEMORANDUM OF LAW IN SUPPORT
CASE NO. 2:25-CV-03605-MWC-BFM

1

2
    b. Email Notice to Settlement Class Members for whom
Defendants have email addresses;

3

4

5
    c. Postcard Notice to Settlement Class Members who are not
current users of the Albert application for whom Email Notice is not sent
because email addresses are not available in the Class List; and

6
    d. Long Form Notice posted to the Settlement Website.

7

8

9

10

11

12

13

14
Settlement Agreement, at Ex. 1–4 thereto (collectively referred to as the
"Notices"). Skip tracing shall be performed by the Administrator for all returned
mail. To the extent it is reasonably able to locate a more current mailing address
using skip tracing, the Administrator shall re-mail any returned Postcard Notice
to the particular Settlement Class Member by first-class US mail. *See* Settlement
Agreement at ¶¶ 60-62. All costs and fees related to dissemination of the Notices
and skip tracing will be considered administrative costs to be paid from the
Settlement Fund. *See id*. at ¶ 52-54.

15

16

17

18

19

20

21
  The Notices include the following information: (1) a plain and concise
description of the nature of the Action and the proposed Settlement, (2) the right of
Settlement Class Members to request exclusion from the Settlement Class or to
object to the Settlement, (3) specifics on the date, time and place of the Final
Approval Hearing, and (4) information regarding Class Counsel's anticipated fee
application and the anticipated request for the Class Representatives' Service
Awards. *See id.* at Exhibits 1–4.

22

23
  **C. Class Counsel's Applications for (i) Attorneys' Fees and Costs and
   (ii) Service Awards.**

24

25
  The Settlement Agreement provides that Class Counsel will file a motion
with the Court requesting an award of attorneys' fees not to exceed 25% of the

26

27

28

MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT
AND INCORPORATED MEMORANDUM OF LAW IN SUPPORT
CASE NO. 2:25-CV-03605-MWC-BFM

Settlement Fund,[1] or $1,300,000, to compensate them for all of the work already performed in this case, all of the work remaining to be performed in connection with this Settlement, and the risks undertaken in prosecuting this case. Class Counsel will also seek reimbursement of out-of-pocket litigation costs. *Id.* at ¶ 77. The enforceability of the Settlement is not contingent on the Court's approval of Class Counsel's application for an award of attorneys' fees and costs. *Id.* at ¶ 78.

The Settlement Agreement further provides that Plaintiffs will request a Service Award in an amount not to exceed $5,000 each, or $10,000 collectively. *Id.* at ¶ 80. Any Service Award awarded by the Court will be paid out of the Settlement Fund and will compensate Plaintiffs for their time and effort serving as the Settlement Class Representatives. *Id.* at ¶ 81.

## IV.    PROPOSED SCHEDULE OF EVENTS.

Consistent with the provisions of the Settlement Agreement, Plaintiffs respectfully propose the following schedule for the various Settlement events:

- Deadline for funding notice costs: within fourteen (14) calendar days of entry of the Preliminary Approval Order (*see* Settlement Agreement at ¶ 46);
- Deadline for submitting the Class List: within twenty-one (21) calendar days after entry of a Preliminary Approval Order (*see id.* at ¶ 55);
- Deadline for commencing the Notice Program, i.e. disseminating the Notices and creating the Settlement Website (the "Notice Date"): within forty-five (45) calendar days after entry of a Preliminary Approval Order (*see id.* at ¶ 56);

---

[1] "The Ninth Circuit has set 25% of the fund as a 'benchmark' award under the percentage-of-fund method." *Stanger v. China Elec. Motor, Inc*., 812 F.3d 734, 738 (9th Cir. 2016).

- Deadline for filing motions for Final Approval, Class Counsel's petition for attorneys' fees, litigation expenses, and Service Awards: at least fourteen (14) calendar days prior to the Opt-Out and Objection Deadlines (*see id*. at ¶ 64);

- Deadline for submission of the requests for exclusion from the Class (the "Opt-Out Deadline") or objections to the Settlement, Plan of Allocation, the request for attorneys' fees and expenses (the "Objection Deadline"): thirty (30) days after the Notice Date (*see id*. at ¶¶ 22-23);

- Deadline for supplemental briefing and responding to objections, if any: no later than fourteen (14) calendar days before the Final Approval Hearing (*see id*. ¶ 64); and

- Final Approval Hearing: at the Court's convenience, but at least ninety-six (96) calendar days from entry of the Preliminary Approval Order (*see id*.).

## V.    APPLICABLE LEGAL STANDARDS.

Rule 23(e) of the Federal Rules of Civil Procedure requires judicial approval of the compromise of claims brought on a class basis. The procedure for judicial review of a proposed class action settlement is well established:

> Approval under 23(e) involves a two-step process in which the Court first determines whether a proposed class action settlement deserves preliminary approval and then, after notice is given to class members, whether final approval is warranted.

*Nat'l Rural Telecommunications Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 525 (C.D. Cal. 2004) (citing Manual for Complex Litigation, Third, § 30.41, at 236–37 (1995)); *Kui Zhu, et al., v. Taronis Techs. Inc., et al*., No. cv-19-04529, 2020 WL 6868906, at *4 (D. Ariz. Nov. 23, 2020) (when considering to grant preliminary approval of a settlement, a court should consider "whether the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no

MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT
AND INCORPORATED MEMORANDUM OF LAW IN SUPPORT
CASE NO. 2:25-CV-03605-MWC-BFM

obvious deficiency, does not improperly grant preferential treatment to class representatives or segments of the class and falls within the range of possible approval"). Importantly, because class members will subsequently receive notice and an opportunity to be heard on the settlement, a court need not review the settlement in detail at the preliminary approval stage; instead, preliminary approval is appropriate so long as the proposed settlement falls "within the range of possible approval." *Kabasele v. Ulta Salon, Cosms. & Fragrance, Inc.*, No. 221CV01639WBSCKD, 2023 WL 2918679, at *2 (E.D. Cal. Apr. 12, 2023) ("At the preliminary approval stage, the court need only determine whether the proposed settlement is within the range of possible approval, and resolve any glaring deficiencies in the settlement agreement before authorizing notice to class members." (internal quotation marks and citation omitted)); *Ismail v. Am. Airlines, Inc.*, No. CV 22-1111-KK-JPRX, 2024 WL 4755594, at *6 (C.D. Cal. Sept. 11, 2024) (similar); *Uschold v. NSMG Shared Services, LLC*, 333 F.R.D. 157, 169 (N.D. Cal. 2019) (stating "a full fairness analysis is unnecessary at th[e] [preliminary approval] stage," and concluding "[p]reliminary approval is thus appropriate if the proposed settlement appears to be the product of serious, informed, noncollusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class, and falls within the range of possible approval." (internal quotations omitted)).

Applying these standards, preliminary approval should be granted because the proposed Settlement and the proposed form and program of providing notice satisfy the requirements for preliminary approval in all respects. *See Adkins v. Facebook, Inc.*, No. C 18-05982 WHA, 2020 WL 6710086, at *1 (N.D. Cal. Nov. 15, 2020) (granting preliminary approval upon finding that the proposed settlement "appear[ed] non-collusive and within the realm of approvable"); *Deaver v.*

MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT
AND INCORPORATED MEMORANDUM OF LAW IN SUPPORT
CASE NO. 2:25-CV-03605-MWC-BFM

1  *Compass Bank, et al.*, No. 13-cv-00222, 2015 WL 4999953, at *6 (N.D. Cal. Aug.

2  21, 2015) ("[P]reliminary approval of a settlement and notice to the class is

3  appropriate if [1] the proposed settlement appears to be the product of serious,

4  informed, noncollusive negotiations, [2] has no obvious deficiencies, [3] does not

5  improperly grant preferential treatment to class representatives or segments of the

6  class, [4] and falls within the range of possible approval." (internal quotations and

7  citation omitted)).

8  **VI.    THE PROPOSED SETTLEMENT WARRANTS PRELIMINARY**

9  **APPROVAL.**

10        As a matter of public policy, settlement is a strongly favored mechanism for

11  resolving disputed claims. *Williams v. First Nat'l Bank,* 216 U.S. 582, 595 (1910).

12  In the class action context in particular, there is an overriding public interest in

13  favor of settlement. *Chea v. Lite Star ESOP Committee, et al.*, No. 1:23-CV-00647-

14  SAB, 2025 WL 2938836, at *3 (E.D. Cal. Oct. 16, 2025) ("The Ninth Circuit has

15  recognized a strong judicial policy favoring settlement of class actions."); *see also*

16  *Rael v. Children's Place, Inc.*, No. 3:16-cv-00370, 2020 WL 434482, at *10 (S.D.

17  Cal. Jan. 28, 2020) (noting the "'strong judicial policy that favors settlements,

18  particularly where complex class action litigation is concerned'" (citing *Class*

19  *Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992))).

20        Turning to the specifics of this Action, preliminary approval of the

21  Settlement should be granted because the Settlement was the result of arm's length

22  negotiations between the Parties, has no obvious deficiencies, treats Settlement

23  Class Members equitably, and is within the range of possible approval.

24

25

26

27

28

MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT
AND INCORPORATED MEMORANDUM OF LAW IN SUPPORT
CASE NO. 2:25-CV-03605-MWC-BFM

## A. The Settlement Satisfies the Criteria for Preliminary Approval.

### 1. The Settlement Was the Result of Arm's Length Negotiations Between the Parties, Has No Obvious Deficiencies, and Treats Settlement Class Members Equally.

Courts recognize that arm's-length negotiations conducted by competent counsel are *prima facie* evidence of fair settlements. The Court's role is to ensure "the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1027 (9th Cir. 1998) (internal quotations omitted). Courts will approve class action settlements entered into after good-faith, arm's-length negotiations. *See Facebook*, 2020 WL 6710086, at *1; *Deaver*, 2015 WL 4999953, at *6. Moreover, "[t]he use of a mediator and the presence of discovery 'support the conclusion that the Plaintiff was appropriately informed in negotiating a settlement.'" *Deaver*, 2015 WL 4999953, at *4 (quoting *Villegas v. J.P. Morgan Chase & Co.*, No. cv 09-00261, 2012 WL 5878390, at *6 (N.D. Cal. Nov. 21, 2012)).

Here, the Settlement was reached only after extensive factual investigation, motions practice, pre-mediation discovery, and a full-day mediation session before a well-respected mediator. Thus, Class Counsel had a wealth of information at their disposal before entering into settlement negotiations. Consequently, Class Counsel were able to adequately assess the strengths and weaknesses of Plaintiffs' case and balance the benefits of settlement against the risks of further litigation. *See* Joint Declaration of Class Counsel ("Joint Declaration") at ¶¶ 6–7.

Equally important, counsel for the Defendants vigorously defended their client's position and demonstrated their commitment to litigate this Action to its conclusion. Hence, the proposed Settlement represents concessions by both parties after hard-fought litigation and negotiations conducted by experienced counsel on both sides who were thoroughly familiar with the factual and legal issues. *See id*.

1    at ¶¶ 20–22.

2       Additionally, there are no obvious deficiencies in the Settlement Agreement.

3    *See In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 947 (9th Cir. 2011);

4    *Deaver*, 2015 WL 4999953, at *4. Settlement Class Members who do not exclude

5    themselves will automatically receive a *pro rata* distribution from the Settlement

6    Fund less any court-approved attorneys' fees and costs, service awards, and costs

7    of settlement notice and administration. The anticipated requests for attorneys'

8    fees and costs and service awards are reasonable and directly in line with

9    prevailing standards in the Ninth Circuit. *Stanger*, 812 F.3d at 738 ("The Ninth

10   Circuit has set 25% of the fund as a 'benchmark' award under the percentage-of-

11   fund method."); *Roe v. Frito-Lay, Inc.*, No 14CV-00751, 2017 WL 1315626, at

12   *8 (N.D. Cal. Apr. 7, 2017) ("[A] $5,000 incentive award is 'presumptively

13   reasonable' in the Ninth Circuit." (collecting cases)). Furthermore, the Settlement

14   provides for up to three distributions, if needed and feasible, with any remaining

15   funds being disbursed as a *cy pres* award. Thus, there is no issue of reverter. *See*

16   Settlement Agreement at ¶¶ 45, 68-69.

17      Additionally, the scope of the release is not overly broad as Settlement Class

18   Members will release only those claims related to their use of the Albert Instant

19   product during the relevant period. *See id.* at ¶¶ 75-76.

20      Lastly, there is no unfair or preferential treatment of any Settlement Class

21   Member. *See Hendricks v. Starkist Co.*, No. 13-CV-00729-HSG, 2015 WL

22   4498083, at *6 (N.D. Cal. July 23, 2015). Here, payments to Settlement Class

23   Members will be made on a *pro rata* basis. Additionally, the prospective relief

24   applies uniformly to all Settlement Class Members. Thus, each Settlement Class

25   Member is given fair and equitable treatment.

26      In sum, the Settlement was achieved through arm's-length negotiations

27   conducted by competent counsel, contains no obvious deficiencies, and treats

28

-12-

Settlement Class Members equitably. Accordingly, there are no grounds to doubt the Settlement's fairness.

2.  The Settlement Falls Within the Range of a Reasonable Settlement While Guaranteeing Settlement Class Members Tangible and Immediate Benefits Without the Risks of Further Litigation.

The value of the proposed Settlement falls well within the range of a reasonable settlement. The determination of a "reasonable" settlement is not susceptible to a mathematical equation yielding a particularized sum. *See Newman v. Stein*, 464 F.2d 689, 693 (2d Cir. 1972) ("[I]n any case there is a range of reasonableness with respect to a settlement – a range which recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion[.]"). To determine if a settlement falls within the range of possible approval, a court considers "plaintiff's expected recovery balanced against the value of the settlement offer, in light of the risks of further litigation." *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1080 (N.D. Cal. 2007); *Stovall-Gusman v. W.W. Granger, Inc.*, No. 13-CV-02540-HSG, 2015 WL 3776765, at *4 (N.D. Cal. June 17, 2015) ("Based on the facts in the record and the parties' arguments at the final fairness hearing, the Court finds that the 10% gross and 7.3% net figures are 'within the range of reasonableness' in light of the risks and costs of litigation.").

Here, the Parties have determined, based upon Defendants' records, that Defendants collected a total of $927,150.00 in Instant Transfer Fees from Class Members. *See* Joint Declaration at ¶ 13. Thus, Plaintiffs achieved a settlement that recoups approximately 5.6 times the Settlement Class's actual damages. Class Members took out approximately 87,510 unique loans. Assuming Plaintiffs could recover $500 for each transaction (which is the statutory penalty for one MLA violation), the total recovery would be $43,755,119. As such, the proposed Settlement Fund represents approximately 12% of potential statutory damages. *Id.*

MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT
AND INCORPORATED MEMORANDUM OF LAW IN SUPPORT
CASE NO. 2:25-CV-03605-MWC-BFM

Moreover, Class Counsel have secured valuable prospective relief for the Settlement Class, which has resulted in Defendants adopting practices, as of September 30, 2025, to refrain from assessing transfer fees on direct transfers of Albert Instant advances to active-duty service members or eligible dependents under the Military Lending Act, for a period of two (2) years, or until September 30, 2027. Settlement Agreement at ¶ 48. Class Counsel estimates the value of this prospective relief at no less than $2,200,000. Class Counsel believe this is an excellent result for Settlement Class Members.

While Plaintiffs estimate that the maximum value of their claims is larger than the settlement amount, when the maximum value of Plaintiffs' and the Settlement Class's claims are discounted by the identifiable risks, experience dictates that the interests of the Class are better served by the proposed Settlement. *See Noll v. eBay, Inc.*, 309 F.R.D. 593, 606 (N.D. Cal. 2015) ("Immediate receipt of money through settlement, even if lower than what could potentially be achieved through ultimate success on the merits, has value to a class, especially when compared to risky and costly continued litigation."); *In re Linkedin User Privacy Litig.*, 309 F.R.D. 573, 587 (N.D. Cal. 2015) (same); *see also West Virginia v. Chas. Pfizer & Co*., 314 F. Supp. 710, 743-44 (S.D.N.Y. 1970), *aff'd*, 440 F.2d 1079 (2d Cir. 1971) ("In considering the proposed compromise, it seems also to be of importance that (if approved) the substantial amounts of money are available for class members now, and not at some distant time in the future. The nature of these actions is such that a final judgment, assuming it to be favorable, could only be obtained after years of expensive litigation. It has been held proper to take the bird in hand instead of a prospective flock in the bush.") (citations omitted); *In re Michael Milken & Assocs. Sec. Litig.*, 150 F.R.D. 46, 53 (S.D.N.Y. 1993) (noting that even a favorable jury verdict "is no guarantee of ultimate success").

1    Here, the risks of continued litigation are substantial. Defendants have

2 vigorously denied, and defended against, Plaintiffs' allegations of wrongdoing. *See*

3 *Churchill Village, L.L.C. v. General Elec.*, 361 F.3d 566, 576 (9th Cir. 2004);

4 *Strougo v. Bassini*, 258 F. Supp. 2d 254, 259-60 (S.D.N.Y. 2003) (citing *In re*

5 *Warner Comm. Sec. Litig.*, 618 F. Supp. 735, 744-45 (S.D.N.Y. 1985), *aff'd*, 798

6 F.2d 35 (2d Cir. 1986)). Defendants filed a motion to compel arbitration. If that

7 motion were granted, then Plaintiffs would have to proceed in individual

8 arbitration. And even if Plaintiffs prevail on the motion, Albert would have a right

9 to interlocutory appeal under the Federal Arbitration Act, which could lead to

10 reversal or, at best, a delay of conservatively more than a year. Following rulings

11 on the forum for these claims, Plaintiffs anticipate that Defendants would likely

12 have vigorously opposed class certification and moved for summary judgment if

13 this case were to continue. Thus, continued litigation of the action would have been

14 lengthy and expensive, and the possibility of Plaintiffs litigating this case on a class

15 basis through judgment is uncertain.

16    Moreover, even if Plaintiffs were to prevail through continued litigation,

17 they still face significant risks as an appeal by Defendants would be likely. "It is

18 known from past experience that no matter how confident one may be of the

19 outcome of litigation, such confidence is often misplaced." *Chas. Pfizer & Co.*, 314

20 F. Supp. at 743-44. For example, in *In re Apple Computer Sec. Litig.*, No. C-84-

21 20148-(A)-JW, 1991 WL 238298 (N.D. Cal. Sept. 6, 1991), the jury rendered a

22 verdict in favor of plaintiffs and found recoverable damages in excess of $100

23 million. Nonetheless, the trial court disagreed and overturned the verdict, entering

24 a judgment notwithstanding the verdict for the individual defendants and ordering

25 a new trial with regard to the corporate defendant. *Id*.

26    In sum, the proposed Settlement provides Settlement Class Members

27 immediate benefits without the risks and costs of further litigation. In contrast to

28

-15-

these tangible, immediate benefits, the outcome of continued litigation and a trial against the Defendants is uncertain. Accordingly, the benefits conferred by the Settlement are within the range of reasonableness. Thus, preliminary approval of the proposed Settlement should be granted.

### B. The Proposed Notice Program Is Adequate.

The Ninth Circuit has recognized that "[n]otice is satisfactory if it generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard." *Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004) (internal quotations omitted). Here, the Notices satisfy the requirements of Rule 23(c)(2)(B) by advising Settlement Class Members of the nature of the claims involved in the case; the essential terms of the Settlement, including the definition of the Settlement Class and the method of distribution of settlement proceeds; the rights of Settlement Class Members to participate in the Settlement, to request exclusion from the Settlement Class or to object to the Settlement, and specifics on the dates for exercising these rights; the requirements for opting out, for objecting, and for making an appearance at the Final Approval Hearing; and the time and location of the Final Approval Hearing. Settlement Agreement, Ex. 1–4. Thus, the Notices provide the necessary information for Settlement Class Members to make an informed decision regarding the proposed Settlement. The Notices also contain information regarding the anticipated amount of Class Counsel's requests for attorneys' fees and costs, and service awards for the Class Representatives.

Moreover, the proposed Settlement requires Plaintiffs to notify Settlement Class Members of the proposed Settlement by (i) Digital Notice via the messaging function of the Albert application for all Settlement Class Members who are current users of the Albert application; (ii) Email Notice to Settlement Class Members for whom Defendants have email addresses; and (iii) Postcard Notice to Settlement

Class Members for whom Email Notice is not sent because email addresses are not available in the Class List. Thus, the notice program is robust and will provide individual notice to Settlement Class Members that have been identified from Defendants' internal records.

In addition to the foregoing Notices, a Settlement Website will be established which will provide access to a Long Form Notice, as well as other key documents related to the Settlement, including the Settlement Agreement, the Court's Preliminary Approval Order, and Class Counsel's application for attorneys' fees and costs. Settlement Agreement, ¶ 41.

Accordingly, the form and manner of Notice proposed here fulfills all of the requirements of Rule 23 and due process. *See Hoover v. Asm Glob. Parent, Inc.*, No. 2:24-cv-10794-WLH-PVC, 2025 U.S. Dist. LEXIS 171808, at *5–*6, *20–*21 (C.D. Cal. Sept. 3, 2025) (preliminarily approving notice program consisting of combination of direct mail, email, and a long-form notice posted to the settlement website).

## VII. CONDITIONAL CERTIFICATION OF THE SETTLEMENT IS APPROPRIATE.

In order to proceed with the preliminary approval process, it is necessary for the Court to preliminarily certify a class for purposes of the Settlement. Rule 23 provides that an action may be maintained as a class action if each of the four prerequisites of Rule 23(a) is met and the action qualifies under one of the subdivisions of Rule 23(b). Rule 23(a) provides:

> (a) Prerequisites. One or more members of a class may sue or be sued as representative parties on behalf of all members only if: (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

Additionally, Rule 23(b) provides, in relevant part:

-17-

(b) Types of Class Actions. A class action may be maintained if Rule 23(a) is satisfied and if: (1) . . ., or (3) the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.

As set forth below, all of the requirements of Rule 23(a) and (b)(3) are met in this case, justifying preliminary certification of the proposed Settlement Class for settlement purposes.

**A. The Class Is Sufficiently Numerous.**

"Numerosity is usually satisfied where the class consists of 40 or more members." *Nevarez v. Forty Niners Football Co., LLC*, 326 F.R.D. 562, 576 (N.D. Cal. 2018). Here, based on a review of Defendant's internal records, the Parties have ascertained that the Settlement Class consists of approximately 13,804 individuals[2] who are dispersed throughout the nation. As such, the Settlement Class clearly satisfies the numerosity requirement.

**B. There Are Common Issues of Law or Fact Common to the Settlement Class**.

The commonality requirement of Rule 23(a)(2) is satisfied in this Action because there are many questions of law and fact common to the Settlement Class that focus on Defendants' common practice of charging and collecting Instant Transfer Fees. *See Silveira v. M&T Bank,* No. 2:19-cv-06958-ODW(KSx), 2021 WL 2403157, at *3 (C.D. Cal. May 6, 2021) (finding allegations that class members were charged "Pay-to-Pay Fees for mortgage payments made over the phone" satisfied commonality and granting preliminary approval of the proposed settlement); *Ikuseghan v. Multicare Health Sys.*, No. C14-5539 BHS, 2015 WL

---

[2] Albert is providing a third-party company with the identifying information of all 809,286 of its customers who meet the criteria for potential membership in the Settlement Class. The company, which specializes in ascertaining active duty and dependent military status, will run the information for these 809,286 individuals against a Department of Defense database to identify all Settlement Class Members.

MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT
AND INCORPORATED MEMORANDUM OF LAW IN SUPPORT
CASE NO. 2:25-CV-03605-MWC-BFM

4600818, at *6 (W.D. Wash. July 29, 2015) (finding commonality satisfied where TCPA claims were predicated on the use of an automated dialing system to make calls on behalf of defendant); *Phillips v. Caliber Home Loans, Inc*., Case No. 19-cv-2711, 2021 WL 3030648, at *7 (D. Minn. July 19, 2021) (stating "Plaintiffs' claims here depend on the common contentions that Pay-to-Pay Fees are neither authorized by Class Members' mortgages nor permitted by law" and finding commonality "including both questions of law and questions of fact"). The common issues of law and fact in this Action include, among other issues: (1) whether Defendants' cash advances constitute extensions of "consumer credit" subject to the protections and limitations of the MLA; (2) whether Defendants' advances exceed the MLA's interest-rate cap; (3) whether Defendants failed to provide required credit disclosures in violation of the MLA; (4) whether Class members are entitled to actual or statutory damages for the aforementioned violations and, if so, in what amounts. Consequently, there are fundamental, common issues of law or fact.

## C. The Claims of Plaintiffs are Typical of the Claims of the Settlement Class.

"[R]epresentative claims are typical if they are reasonably co-extensive with those of absent class members; they need not be substantially identical." *Hanlon*, 150 F.3d at 1020. "Typicality refers to the nature of the claim or defense of the class representative, and not to the specific facts from which it arose or the relief sought." *Hanon v. Dataprods. Corp*., 976 F.2d 497, 508 (9th Cir. 1992). Here, Plaintiffs' claims are based on Defendants' systematic collection of Instant Transfer Fees. Plaintiffs' and the Settlement Class's claims are based on the same legal theories. Because Plaintiffs' claims arise from the same course of conduct that affected all Settlement Class members and are based on the same legal theories as the claims of all Settlement Class members, typicality is satisfied.

MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT
AND INCORPORATED MEMORANDUM OF LAW IN SUPPORT
CASE NO. 2:25-CV-03605-MWC-BFM

1

**D. Plaintiffs and Class Counsel Have Fairly and Adequately**
**Represented the Interests of the Settlement Class, and Will**
**Continue to Do So.**

Adequacy requires the representative of a class to provide fair and adequate representation of the class. Fed. R. Civ. P. 23(a)(4). "To determine whether named plaintiffs will adequately represent a class, courts must resolve two questions: '(1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 985 (9th Cir. 2011) (quoting *Hanlon*, 150 F.3d at 1020).

Here, Plaintiffs have retained counsel with significant expertise in complex civil litigation. More specifically, Class Counsel are nationally recognized law firms within the field of complex class action litigation and have experience in matters involving consumer claims related to excessive, usurious, and/or unauthorized fees. *See* Joint Declaration at ¶¶ 3–5 and Exhibits A–B (firm resumes) thereto. In addition, Class Counsel are well-capitalized, allowing them to dedicate considerable resources to the fullest extent necessary to achieve the best possible result for class members. *Id*. at ¶ 5. Thus, Class Counsel are unquestionably qualified to undertake this litigation.

Moreover, Plaintiffs and the Settlement Class desire the same outcome of this litigation, namely to retrieve the largest possible monetary recovery from the Defendants related to the alleged improper collection of Instant Transfer Fees. Thus, Plaintiffs' interests coincide identically with the interests of the Settlement Class. Additionally, because of this, Plaintiffs have vigorously prosecuted this case for the benefit of all members of the Settlement Class. Further, there is no conflict or antagonism between Plaintiffs and the Settlement Class. Consequently, Plaintiffs satisfy the adequacy requirement.

MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT
AND INCORPORATED MEMORANDUM OF LAW IN SUPPORT
CASE NO. 2:25-CV-03605-MWC-BFM

**E. The Common Questions of Law and Fact in this Action
Predominate Over Any Individual Issues and a Class Action Is the
Superior and Most Efficient Means to Adjudicate the Claims.**

In accord with Rule 23(b), class certification is appropriate when common
questions of law or fact predominate over individual questions and a class action is
superior to other available means of adjudication. *See* Fed. R. Civ. P. 23(b)(3).
These requirements are satisfied in this case.

1.    Common Questions of Law and Fact Predominate.

In analyzing the predominance factor, the United States Supreme Court has
defined this inquiry as establishing "whether proposed classes are sufficiently
cohesive to warrant adjudication by representation." *Amchem Products Inc. v.
Windsor*, 521 U.S. 591, 622 (1997). In this regard, the predominance inquiry
"focuses on the relationship between the common and individual issues. When
common questions present a significant aspect of the case and they can be resolved
for all members of the class in a single adjudication, there is clear justification for
handling the dispute on a representative rather than on an individual basis." *Hanlon*,
150 F.3d at 1022 (citations and quotations omitted); *see also In re Prudential Ins.
Co. of Am. Sales Practice Litig.*, 148 F.3d 283, 314-15 (3d Cir. 1998) (affirming
the certification of a nationwide consumer fraud class).

Common questions of law and fact predominate here because the central
liability questions in this case—whether Defendants' collection of the Instant
Transfer Fees violated the MLA—can be resolved for all Settlement Class
Members through generalized evidence. *See Silveira,* 2021 WL 2403157, at *4
(finding whether defendant's "policy of charging Pay-to-Pay Fees was in breach of
the Class Members' contracts and a violation of federal and state law" predominate
over individualized questions); *Watkins v. Rapid Fin. Sols., Inc.*, No.
320CV00509MMDCSD, 2022 WL 16964808, at *8 (D. Nev. Nov. 15, 2022)

MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT
AND INCORPORATED MEMORANDUM OF LAW IN SUPPORT
CASE NO. 2:25-CV-03605-MWC-BFM

(finding common questions predominated including "whether Defendants' notices on the Cards and accompanying documentation satisfied EFTA's disclosure requirements before imposing inactivity fees" and "whether unilaterally transferring class members' funds to a fee-laden Card is an unfair or deceptive trade practice, as defined by Nevada statute.").

### 2. A Class Action is the Superior Method of Adjudicating this Case.

As explained in *Amchem*, "[c]onfronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems . . . for the proposal is that there be no trial." *Amchem*, 521 U.S. at 620. Thus, any manageability problems that may have existed in this case are eliminated by the proposed Settlement. *See e.g.*, *Silveira*, 2021 WL 2403157, at *4 (finding superiority satisfied).

## VIII. CONCLUSION

For all the foregoing reasons, Plaintiffs respectfully request that the Court enter an order, substantially in the form of the proposed Preliminary Approval Order (Ex. 5 to the Settlement Agreement): (i) provisionally certifying the Settlement Class; (ii) preliminarily approving the proposed Settlement as fair, reasonable, and adequate; (iii) approving the form and manner of notice and directing that notice of the proposed Settlement be given to members of the Settlement Class; (iv) approving the proposed schedule of events; and (v) scheduling a hearing before the Court to determine whether the Settlement should be finally approved.

Dated: October 29, 2025                    Respectfully submitted,


                                           */s/ Lee Lowther*
                                           Randall K. Pulliam (*pro hac vice*)
                                           rpulliam@cbplaw.com

MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT
AND INCORPORATED MEMORANDUM OF LAW IN SUPPORT
CASE NO. 2:25-CV-03605-MWC-BFM

1

2

Lee Lowther (*pro hac vice*)
llowther@cbplaw.com
**CARNEY BATES & PULLIAM, PLLC**
One Allied Dr., Ste. 1400
Little Rock, AR 72202
Telephone: (501) 312-8500
Facsimile: (501) 312-8505

3

4

5

6

7

**WADE KILPELA SLADE LLP**
Gillian L. Wade (S.B. #229124)
gwade@waykayslay.com

8

Marc A. Castaneda (S.B. #299001)

9

10

marc@waykayslay.com
2450 Colorado Ave., Ste. 100E

11

Santa Monica, California 90404
Telephone: (310) 396-9600

12

13

**JACOBSON PHILLIPS PLLC**
Joshua R. Jacobson (*pro hac vice*)
joshua@jacobsonphillips.com
2277 Lee Rd., Ste. B
Winter Park, FL 32789
Telephone: (321) 447-6461

14

15

16

17

Attorneys for Plaintiffs and the Proposed
Settlement Class

18

19

20

21

22

23

24

25

26

27

28

MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT
AND INCORPORATED MEMORANDUM OF LAW IN SUPPORT
CASE NO. 2:25-CV-03605-MWC-BFM